UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------------------
RYAN O'DELL,                                          :
                                                      :
       Plaintiff,                                  :   Civil Action No. 23-cv-06043
                                                      :
v.                                                    :   **COMPLAINT FOR VIOLATIONS OF**
                                                      :   **SECTIONS 14(a) AND 20(a) OF THE**
CIRCOR INTERNATIONAL, INC.,                           :   **SECURITIES EXCHANGE ACT OF**
HELMUTH LUDWIG, SAMUEL R.                             :   **1934**
CHAPIN, TINA M. DONIKOWSKI, BRUCE                     :
M. LISMAN, TONY NAJJAR, JOHN                          :   **JURY TRIAL DEMANDED**
O'DONNELL, and JILL D. SMITH,                         :
                                                      :
       Defendants.                                 :
---------------------------------------------------------  :

Ryan O'Dell ("Plaintiff"), by and through his attorneys, alleges the following upon information and belief, including investigation of counsel and review of publicly-available information, except as to those allegations pertaining to Plaintiff, which are alleged upon personal knowledge:

1. This is an action brought by Plaintiff against Circor International, Inc. ("Circor" or the "Company") and the members of Circor's board of directors (the "Board" or the "Individual Defendants" and collectively with the Company, the "Defendants") for their violations of Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. §§ 78n(a), 78t(a), and SEC Rule 14a-9, 17 C.F.R. 240.14a-9 and 17 C.F.R. § 244.100, in connection with the proposed acquisition of Circor by affiliates of Kohlberg Kravis & Roberts & Co. L.P. ("KKR").

2. Defendants have violated the above-referenced sections of the Exchange Act by filing a materially incomplete and misleading Preliminary Proxy Statement on Schedule 14A (the "Proxy Statement") on July 5, 2023 with the United States Securities and Exchange Commission

("SEC") and disseminating it to Company stockholders. The Proxy Statement recommends that Company stockholders vote in favor of a proposed transaction whereby Cube Merger Sub, Inc. ("Merger Sub"), a wholly-owned subsidiary of Cube BidCo, Inc. ("Parent"), will merge with and into Circor, with Circor surviving as a wholly-owned subsidiary of Parent (the "Proposed Transaction"). Pursuant to the terms of the definitive agreement and plan of merger the companies entered into on June 5, 2023, as amended on June 26, 2023 by Amendment No. 1 and further amended on June 29, 2023 by Amendment No. 2 (collectively, the "Merger Agreement"), each Circor stockholder will receive $56.00 in cash with the possibility of additional cash consideration in the event that the Proposed Transaction is not closed by October 31, 2023 (the "Merger Consideration") for each Circor share owned. Merger Sub and Parent are both affiliates of KKR.

3. As discussed below, Defendants have asked Circor's stockholders to support the Proposed Transaction based upon the materially incomplete and misleading representations and information contained in the Proxy Statement, in violation of Sections 14(a) and 20(a) of the Exchange Act. Specifically, the Proxy Statement contains materially incomplete and misleading information concerning the analyses performed by the Company's financial advisors, Evercore Group LLC ("Evercore") and J.P. Morgan Securities LLC ("J.P. Morgan" and together with Evercore, the "Financial Advisors"), in support of their fairness opinions.

4. It is imperative that the material information that has been omitted from the Proxy Statement is disclosed to the Company's stockholders prior to the forthcoming stockholder vote so that they can properly exercise their corporate suffrage rights.

5. For these reasons and as set forth in detail herein, Plaintiff seeks to enjoin Defendants from taking any steps to consummate the Proposed Transaction unless and until the material information discussed below is disclosed to Circor's stockholders or, in the event the

Proposed Transaction is consummated, to recover damages resulting from the Defendants' violations of the Exchange Act.

## JURISDICTION AND VENUE

6. This Court has subject matter jurisdiction pursuant to Section 27 of the Exchange Act (15 U.S.C. § 78aa) and 28 U.S.C. § 1331 (federal question jurisdiction), as Plaintiff alleges violations of Sections 14(a) and 20(a) of the Exchange Act and SEC Rule 14a-9.

7. Personal jurisdiction exists over each Defendant either because the Defendant conducts business in or maintains operations in this District, or is an individual who is either present in this District for jurisdictional purposes or has sufficient minimum contacts with this District as to render the exercise of jurisdiction over Defendant by this Court permissible under traditional notions of fair play and substantial justice.

8. Venue is proper in this District under Section 27 of the Exchange Act, 15 U.S.C. § 78aa, as well as under 28 U.S.C. § 1391, because Plaintiff and Defendants reside in this District.

## PARTIES

9. Plaintiff is, and has been at all relevant times, an owner of shares of Circor stock and has held such shares since prior to the wrongs complained of herein.

10. Individual Defendant Helmuth Ludwig has served as a member of the Board since January 2016 and is the Chair of the Board.

11. Individual Defendant Samuel R. Chapin has served as a member of the Board since January 2019.

12. Individual Defendant Tina M. Donikowski has served as a member of the Board since March 2017.

13. Individual Defendant Bruce M. Lisman has served as a member of the Board since June 2020.

3

14. Individual Defendant Tony Najjar has served as a member of the Board since March 2023 and is the President and Chief Executive Officer of the Company.

15. Individual Defendant John O'Donnell has served as a member of the Board since November 2011.

16. Individual Defendant Jill D. Smith has served as a member of the Board since January 2020.

17. Defendant Circor is a company incorporated under the laws of the State of Delaware and maintains its principal offices at 30 Corporate Drive, Suite 200, Burlington, MA 01803. The Company's stock trades on the New York Stock Exchange under the symbol "CIR."

18. The defendants identified in paragraphs 10-16 are collectively referred to as the "Individual Defendants" or the "Board."

19. The defendants identified in paragraphs 10-17 are collectively referred to as the "Defendants."

**SUBSTANTIVE ALLEGATIONS**

**A.    The Proposed Transaction**

20. Circor designs, manufactures, and distributes flow and motion control products internationally. The Company has a product portfolio of brands serving its customers' demanding applications. It operates through two segments, Aerospace & Defense and Industrial. The Aerospace & Defense segment manufactures and markets control valves, pumps, regulators, fluid controls, pneumatic valves and controls, electro-mechanical controls, electric motors, other flow control products and subsystems, propeller pumps, actuation systems, MIL-spec butterfly valves and actuators, brushless DC motors, switches, and actuation components and sub-systems. Its products and services are used in the military and defense, commercial aerospace, business and general aviation, and general industrial markets, and also serves aircraft manufacturers and

4

suppliers. This segment offers its products under the CIRCOR Aerospace, Aerodyne Controls, CIRCOR Bodet, CIRCOR Industria, CIRCOR Motors, Hale Hamilton, Leslie Controls, Portland Valve, and Warren Pumps brands.

21.   The Company's Industrial segment provides screw pumps, progressing cavity pumps, specialty centrifugal pumps, positive displacement pumps, and gear metering pumps; automatic recirculation valves, engineered valves, and general service control valves; and top and bottom unheading devices and center feed devices for end-users, original equipment manufacturers, and engineering, procurement, and construction companies. This segment offers its products under the Allweiler, DeltaValve, Houttuin, IMO Pump, IMO AB, Leslie Controls, RG Lawrence, RTK, Schroedahl, TapcoEnpro, Tushaco, and Zenith brands.

22.   The Company markets its solutions directly and through various sales partners to approximately 14,000 customers in approximately 100 countries. Circor was incorporated in 1999 and is headquartered in Burlington, Massachusetts.

23.   On June 29, 2023, the Company announced the Proposed Transaction:

> BURLINGTON, Mass.--(BUSINESS WIRE)--Jun. 29, 2023-- CIRCOR International, Inc. ("CIRCOR" or the "Company") (NYSE: CIR) today announced that it has amended its definitive merger agreement (the "Amended Agreement") with affiliates of investment funds managed by KKR (such affiliates are referred to herein as "KKR") to acquire the Company for $56.00 per share in cash, an increase of 9.8% over KKR's bid of $51.00 per share on June 26, 2023, and a 76.8% premium to the Company's unaffected stock price on June 2, 2023. KKR will provide a full equity backstop for the consummation of the merger.
>
> Under the terms of the Amended Agreement, in addition to receiving $56.00 per share, CIRCOR stockholders will, subject to certain conditions, receive additional cash consideration from KKR if the transaction has not closed by October 31, 2023. The maximum aggregate amount of the "ticking fee" would be $1 per share, with the actual amount accruing on a prorated daily basis

between November 1, 2023 and December 31, 2023, subject to adjustment if the filing of the CIRCOR proxy statement, prepared in connection with the merger, is delayed.

CIRCOR's Board of Directors (the "Board") received the Amended Agreement from KKR on June 29, 2023, following receipt of an unsolicited, binding acquisition proposal from Arcline Investment Management LP ("Arcline") to acquire CIRCOR for $57.00 in cash. Consistent with its fiduciary responsibilities, the Board, in consultation with its outside legal and financial advisors, carefully reviewed the unsolicited proposal and the further amended proposal from KKR.

The CIRCOR Board unanimously concluded that the difference in price contemplated by the Arcline proposal is more than offset by the increased deal certainty associated with KKR's Amended Agreement. KKR's Amended Agreement also offers greater financing certainty and a clearer and faster path to receiving anticipated antitrust approvals. In the Board's view, the time value of money considerations, along with KKR's ticking fee, more than sufficiently addresses the $1 difference in the price per share.

The Company expects to file preliminary proxy materials with the U.S. Securities and Exchange Commission next week, which will provide further detail regarding the Board's decision, its strategic progress, and additional information related to the Amended Agreement.

"The Board unanimously believes that KKR's revised and enhanced proposal is in the best interests of our stockholders, provides certainty of closing on an expedited timetable, and significantly benefits our employees, customers and other stakeholders around the world," said CIRCOR Board Chair Helmuth Ludwig. "Throughout this process, we have focused singularly on unlocking the incremental value of this outstanding global organization. With the additional value, anticipated timely closing and a clear and direct regulatory path, the KKR agreement achieves that commitment."

The Board unanimously supports the Amended Agreement with KKR and recommends that stockholders vote in favor of the amended KKR transaction. The transaction remains on track to close in the fourth quarter of 2023, and KKR and CIRCOR submitted their Hart-Scott-Rodino filings on June 20, 2023. The transaction remains subject to the receipt of approval from the Company's

> stockholders and certain required regulatory approvals, as well as the satisfaction of other customary closing conditions.[1]
>
> **Advisors**
>
> Evercore, J.P. Morgan Securities LLC, and Ropes & Gray LLP are serving as advisors to CIRCOR.

\* \* \*

24.     The Board has unanimously agreed to the Proposed Transaction. It is therefore imperative that Circor's stockholders are provided with the material information that has been omitted from the Proxy Statement, so that they can meaningfully assess whether or not the Proposed Transaction is in their best interests prior to the forthcoming stockholder vote.

**B.     The Materially Incomplete and Misleading Proxy Statement**

25.     On July 5, 2023, Circor filed the Proxy Statement with the SEC in connection with the Proposed Transaction. The Proxy Statement was furnished to the Company's stockholders and solicits the stockholders to vote in favor of the Proposed Transaction. The Individual Defendants were obligated to carefully review the Proxy Statement before it was filed with the SEC and disseminated to the Company's stockholders to ensure that it did not contain any material misrepresentations or omissions. However, the Proxy Statement misrepresents and/or omits material information that is necessary for the Company's stockholders to make an informed decision concerning whether to vote in favor of the Proposed Transaction, in violation of Sections 14(a) and 20(a) of the Exchange Act.

*Omissions and/or Material Misrepresentations Concerning Financial Projections*

---

[1] *CIRCOR International Enters into Amended Definitive Merger Agreement with KKR at $56.00 Per Share in Cash*, CIRCOR (June 29, 2023), https://investors.circor.com/news-releases/news-release-details/circor-international-enters-amended-definitive-merger-agreement.

26. The Proxy Statement fails to provide material information concerning financial projections by Circor management and relied upon by the Financial Advisors in their analyses. The Proxy Statement discloses management-prepared financial projections for the Company that are materially misleading. The Proxy Statement indicates that in connection with the rendering of its fairness opinion, the Company prepared certain non-public financial forecasts (the "Company Projections") and provided them to the Board and the Financial Advisors to aid them in forming a view about the stand-alone valuation of the Company. Accordingly, the Proxy Statement should have, but fails to provide, certain information in the projections that Circor management provided to the Board and the Financial Advisors. Courts have uniformly stated that "projections … are probably among the most highly-prized disclosures by investors. Investors can come up with their own estimates of discount rates or [] market multiples. What they cannot hope to do is replicate management's inside view of the company's prospects." *In re Netsmart Techs., Inc. S'holders Litig.*, 924 A.2d 171, 201-03 (Del. Ch. 2007).

27. For the Company Projections, the Proxy Statement provides values for the non-GAAP (Generally Accepted Accounting Principles) financial measures: Adjusted EBITDA, Adjusted EBIT, and Unlevered Free Cash Flow, but fails to provide line items used to calculate these measures *and/or* a reconciliation of the non-GAAP measures to their most comparable GAAP measures, in direct violation of Regulation G and consequently Section 14(a).

28. When a company discloses non-GAAP financial measures in a Proxy Statement that were relied upon by a board of directors to recommend that stockholders exercise their corporate suffrage rights in a particular manner, the company must, pursuant to SEC regulatory mandates, also disclose all projections and information necessary to make the non-GAAP measures not misleading, and must provide a reconciliation (by schedule or other clearly

8

understandable method) of the differences between the non-GAAP financial measure disclosed or released with the most comparable financial measure or measures calculated and presented in accordance with GAAP. 17 C.F.R. § 244.100.

29. The SEC has noted that:

> [C]ompanies should be aware that this measure does not have a uniform definition and its title does not describe how it is calculated. Accordingly, a clear description of how this measure is calculated, as well as the necessary reconciliation, should accompany the measure where it is used. Companies should also avoid inappropriate or potentially misleading inferences about its usefulness. For example, "free cash flow" should not be used in a manner that inappropriately implies that the measure represents the residual cash flow available for discretionary expenditures, since many companies have mandatory debt service requirements or other non-discretionary expenditures that are not deducted from the measure.[2]

30. Thus, to cure the Proxy Statement and the materially misleading nature of the forecasts under SEC Rule 14a-9 as a result of the omitted information in the Proxy Statement, Defendants must provide a reconciliation table of the non-GAAP measures to the most comparable GAAP measures in order to make the non-GAAP measures included in the Proxy Statement not misleading.

*Omissions and/or Material Misrepresentations Concerning Evercore's Financial Analyses*

31. With respect to Evercore's *Discounted Cash Flow Analysis*, the Proxy Statement fails to disclose: (i) the implied terminal value of the Company; (ii) the inputs and assumptions underlying the perpetuity growth rates of 2.5% to 3.5%; (iii) the inputs and assumptions underlying the discount rates ranging from 12.0% to 14.0%; (iv) the tax savings from usage of Circor's estimated federal net operating losses and Circor's estimated future losses, as provided by Circor

---

[2] U.S. Securities and Exchange Commission, *Non-GAAP Financial Measures*, last updated Apr. 4, 2018, available at: https://www.sec.gov/divisions/corpfin/guidance/nongaapinterp.htm.

9

management; (v) the estimated net debt of the Company as of April 2, 2023; and (vi) the number of fully diluted outstanding shares of Circor stock as of June 28, 2023.

32. With respect to Evercore's *Selected Public Company Trading Analysis*, the Proxy Statement fails to disclose: (i) the financial metrics and multiples for the companies selected by Evercore for the analysis; and (ii) the basis for selecting and applying an enterprise value/Adjusted EBITDA multiple reference range of 8.0x – 12.0x to the Company's CY23E Adjusted EBITDA.

33. With respect to Evercore's *Selected Transactions Analysis*, the Proxy Statement fails to disclose: (i) the financial metrics and multiples for the transactions selected by Evercore for the analysis; and (ii) the basis for selecting a reference range of enterprise value to LTM Adjusted EBITDA multiples of 9.0x – 12.5x to the Company's CY23E Adjusted EBITDA.

34. With respect to Evercore's *Equity Research Analyst Price Target* analysis, the Proxy Statement fails to disclose: (i) the two equity research analysts reviewed by Evercore; and (ii) the price targets for Circor published by the equity research analysts.

35. With respect to Evercore's *Premiums Paid Analysis*, the Proxy Statement fails to disclose: (i) the selected transactions and the premiums paid in those transactions; and (ii) the basis for applying the reference range of 15.0% to 55.0% to the Company's closing stock price of $31.67 as of June 2, 2023.

*Omissions and/or Material Misrepresentations Concerning J.P. Morgan's Financial Analyses*

36. With respect to J.P. Morgan's *Public Trading Multiples* analysis, the Proxy Statement fails to disclose: (i) the financial metrics and multiples for the companies selected by J.P. Morgan for the analysis; and (ii) the basis for selecting and applying a FV/2023E Adjusted EBITDA multiple reference range of 8.5x – 14.5x and a FV/2024E Adjusted EBITDA multiple reference range of 7.5x – 13.5x.

37. With respect to J.P. Morgan's *Selected Transaction Analysis*, the Proxy Statement fails to disclose: (i) the financial metrics and multiples for the transactions selected by J.P. Morgan for the analysis; and (ii) the basis for selecting a FV/LTM Adjusted EBITDA multiple reference range of 11.0x to 14.0x.

38. With respect to J.P. Morgan's *Discounted Cash Flow Analysis*, the Proxy Statement fails to disclose: (i) the range of terminal values of the Company; (ii) the inputs and assumptions underlying the terminal growth rates of 2.5% to 3.5%; (iii) the inputs and assumptions underlying the discount rate ranging from 11.0% to 13.0%; (iv) the tax savings from usage of Circor's estimated federal net operating losses and Circor's estimated future losses, as provided by Circor management; (v) the estimated net debt of the Company as of April 2, 2023; and (vi) the number of fully diluted outstanding shares of Circor stock.

39. With respect to J.P. Morgan's *Analyst Price Targets* analysis, the Proxy Statement fails to disclose: (i) the two equity research analysts reviewed by J.P. Morgan; and (ii) the price targets for Circor published by the equity research analysts.

40. In sum, the omission of the above-referenced information renders statements in the Proxy Statement materially incomplete and misleading in contravention of the Exchange Act. Absent disclosure of the foregoing material information prior to the special stockholder meeting to vote on the Proposed Transaction, Plaintiff will be unable to make a fully-informed decision regarding whether to vote in favor of the Proposed Transaction, and he is thus threatened with irreparable harm, warranting the injunctive relief sought herein.

**CLAIMS FOR RELIEF**

**COUNT I**

**On Behalf of Plaintiff Against All Defendants for Violations of
Section 14(a) of the Exchange Act and Rule 14a-9 and 17 C.F.R. § 244.100**

41. Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

42. Rule 14a-9, promulgated by the SEC pursuant to Section 14(a) of the Exchange Act, provides that proxy communications with stockholders shall not contain "any statement which, at the time and in the light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading." 17 C.F.R. § 240.14a-9.

43. Defendants have issued the Proxy Statement with the intention of soliciting stockholder support for the Proposed Transaction. Each of the Defendants reviewed and authorized the dissemination of the Proxy Statement and the use of their name in the Proxy Statement, which fails to provide critical information regarding, among other things, the financial projections that were prepared by the Company and relied upon by the Board in recommending the Company's stockholders vote in favor of the Proposed Transaction.

44. In so doing, Defendants made untrue statements of fact and/or omitted material facts necessary to make the statements made not misleading. Each of the Individual Defendants, by virtue of their roles as officers and/or directors, were aware of the omitted information but failed to disclose such information, in violation of Section 14(a). The Individual Defendants were therefore negligent, as they had reasonable grounds to believe material facts existed that were misstated or omitted from the Proxy Statement, but nonetheless failed to obtain and disclose such information to stockholders, although they could have done so without extraordinary effort.

45. Defendants were, at the very least, negligent in preparing and reviewing the Proxy Statement. The preparation of a Proxy Statement by corporate insiders containing materially false or misleading statements or omitting a material fact constitutes negligence. Defendants were

negligent in choosing to omit material information from the Proxy Statement or failing to notice the material omissions in the Proxy Statement upon reviewing it, which they were required to do carefully.  Indeed, Defendants were intricately involved in the process leading up to the signing of the Merger Agreement and the preparation and review of strategic alternatives.

46. The misrepresentations and omissions in the Proxy Statement are material to Plaintiff, who will be deprived of his right to cast an informed vote if such misrepresentations and omissions are not corrected prior to the vote on the Proposed Transaction.  Plaintiff has no adequate remedy at law.  Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

### COUNT II

**On Behalf of Plaintiff Against the Individual Defendants for Violations of Section 20(a) of the Exchange Act**

47. Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

48. The Individual Defendants acted as controlling persons of Circor within the meaning of Section 20(a) of the Exchange Act as alleged herein.  By virtue of their positions as directors of Circor, and participation in and/or awareness of the Company's operations and/or intimate knowledge of the incomplete and misleading statements contained in the Proxy Statement filed with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the decision-making of Circor, including the content and dissemination of the various statements that Plaintiff contends are materially incomplete and misleading.

49. Each of the Individual Defendants was provided with or had unlimited access to copies of the Proxy Statement and other statements alleged by Plaintiff to be misleading prior to

and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

50. In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of Circor, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the Exchange Act violations alleged herein, and exercised the same. The omitted information identified above was reviewed by the Board prior to voting on the Proposed Transaction. The Proxy Statement at issue contains the unanimous recommendation of the Board to approve the Proposed Transaction. The Individual Defendants were thus directly involved in the making of the Proxy Statement.

51. In addition, as the Proxy Statement sets forth at length, and as described herein, the Individual Defendants were involved in negotiating, reviewing, and approving the Merger Agreement. The Proxy Statement purports to describe the various issues and information that the Individual Defendants reviewed and considered. The Individual Defendants participated in drafting and/or gave their input on the content of those descriptions.

52. By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

53. As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) and Rule 14a-9, by their acts and omissions as alleged herein. By virtue of their positions as controlling persons, these defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of Individual Defendants' conduct, Plaintiff will be irreparably harmed.

54.     Plaintiff has no adequate remedy at law. Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

## RELIEF REQUESTED

WHEREFORE, Plaintiff demands injunctive relief in his favor and against the Defendants jointly and severally, as follows:

A.     Preliminarily and permanently enjoining Defendants and their counsel, agents, employees and all persons acting under, in concert with, or for them, from proceeding with, consummating, or closing the Proposed Transaction, unless and until Defendants disclose the material information identified above which has been omitted from the Proxy Statement;

B.     Rescinding, to the extent already implemented, the Merger Agreement or any of the terms thereof, or granting Plaintiff rescissory damages;

C.     Directing the Defendants to account to Plaintiff for all damages suffered as a result of their wrongdoing;

D.     Awarding Plaintiff the costs and disbursements of this action, including reasonable attorneys' and expert fees and expenses; and

E.     Granting such other and further equitable relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury.

DATED: July 13, 2023

        **WOLF HALDENSTEIN ADLER FREEMAN & HERZ LLP**

        /s/ *Benjamin Y. Kaufman*
        Benjamin Y. Kaufman
        Rourke C. Donahue

270 Madison Avenue
New York, NY 10016
Telephone: (212) 545-4620
Fax: (212) 686-0114
kaufman@whafh.com
donahue@whafh.com

*Attorneys for Plaintiff*